IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JULIO RAUL SANDOVAL ROMERO,
DIANA CAROLINA SUAREZ MADOLET,
and all others similarly situated under 29
U.S.C. § 216(b),

    Plaintiffs,

       vs.

VANDE CORP. d/b/a LATIN AMERICAN
RESTAURANT and PASQUALE RENZI,

    Defendants.

_____/

## COMPLAINT FOR UNPAID OVERTIME WAGES AND UNPAID FEDERAL MINIMUM WAGES

    Plaintiffs, JULIO RAUL SANDOVAL ROMERO (hereinafter "ROMERO), DIANA

CAROLINA SUAREZ MADOLET (hereinafter "MADOLET"), on behalf of themselves and all

others similarly situated under 29 U.S.C. § 216(b), through undersigned counsel, file this

Complaint against Defendants VANDE CORP. d/b/a LATIN AMERICAN RESTAURANT and

PASQUALE RENZI, jointly and severally and alleges the following:

### JURISDICTION AND VENUE

   1.  This is an action arising under the Fair Labor Standards Act 29 U.S.C. §§ 201-216. This

Court has jurisdiction under 29 U.S.C. § 216(B).

   2.  The Plaintiff JULIO RAUL SANDOVAL ROMERO CALIX was a resident of Miami-

Dade County, Florida at the time the dispute arose.

**1** of **10**

3.  The Plaintiff DIANA CAROLINA SUAREZ MADOLET was a resident of Miami-Dade County, Florida at the time the dispute arose.

4.  The Defendant VANDE CORP. d/b/a LATIN AMERICAN RESTAURANT regularly transacts business in Miami-Dade County. Upon information and belief the Defendant Corporation was the Plaintiffs' FLSA employer during each Plaintiffs' relevant period of employment ("the relevant time period").

5.  The Defendant PASQUALE RENZI is a corporate officer and/or owner and manager of the Defendant Corporation who ran the day-to-day operations of the Corporate Defendant for the relevant time period and was responsible for paying the Plaintiffs' their wages for the relevant time periods and controlled Plaintiffs' work and schedule and was, therefore, each Plaintiffs' employer as defined by 29 U.S.C. § 203 (d).

6. Venue is proper in this Court because the Plaintiffs were residents of Miami-Dade County, Florida, at the time the dispute arose, the Defendants do business in Miami-Dade, Florida, and the events giving rise to these claims occurred within Miami-Dade County, Florida.

## COUNT I. FEDERAL[1] MINIMUM WAGE VIOLATION AGAINST DEFENDANTS AS TO PLAINTIFF MADOLET ONLY

7. Plaintiffs re-allege the factual and jurisdictional statements in paragraphs 1 through 6 as though fully set forth herein.

8. This action arises under the laws of the United States.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219.

10. 29 U.S.C. § 206(a)(1) states "… an employer must pay a minimum wage of $5.15/hr to

---

[1] Plaintiff MADOLET will amend to include her Florida Minimum Wage claims after the presuit notice requirement under the Florida law is satisfied.

an employee who is engaged in commerce…"  On July 24, 2009, Federal minimum wage was raised to $7.25/hr, where it has remained since that time.

11. Plaintiff MADOLET worked for Defendants as a waitress from on or about January 2016 through on or about September 2018 and then from December 2018 through on or about January 23, 2022. ("relevant time periods")

12. As a waitress, Plaintiff MADOLET's job duties required of her by Defendants, along with other employees, included serving foods obtained from national and international sources, to customers who were local, national, and international residents as well as process credit card payments through the interstate wire system of the United States, for customers she was serving at her tables.

13.      Defendants' business activities involve those to which the Fair Labor Standards Act applies. Both the Defendants' business and Plaintiff MADOLET's work for the Defendants affected interstate commerce for the relevant time period. Plaintiff MADOLET's work for the Defendants affected interstate commerce for the relevant time period because the materials and goods Plaintiff MADOLET's used on a constant and/or continual basis and/or that were supplied to her by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiffs' use of the same. Plaintiff MADOLET's work for the Defendants was actually in and/or so closely related to the movement of commerce while she worked for the Defendants that the Fair Labor Standards Act applies to Plaintiff MADOLET's work for the Defendants.

14.      Additionally, Defendants regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce as Plaintiff MADOLET did, thus making

Defendants' business an enterprise covered under the Fair Labor Standards Act.

15.        Upon information and belief, the Defendant Corporation had gross sales or business done in excess of $500,000 annually for the years 2010 through to 2021 and expect the same for 2022.

16.        During the period of January 2016 through on or about September 2018, Plaintiff MADOLET worked 6 days per week from 7:00 am to 4:00 pm, totaling 54 hours per week.

17.        During this period, Plaintiff MADOLET was paid nothing as an hourly wage for her hours worked weekly in violation of the Fair Labor Standards Act. Plaintiff MADOLET therefore claims the full minimum wage rate for each respective year, for 40 hours worked each week during this period.

18.        During the period of December 2018 through on or about March 20, 2020, Plaintiff MADOLET worked 6 days per week from 7:00 am to 4:00 pm, totaling 54 hours per week.

19.        During this period in ¶ 18 above, Plaintiff was paid an hourly rate of $5.63 per hour, in violation of the Fair Labor Standards Act. Plaintiff MADOLET, therefore, claims the difference between the minimum wage rate for each respective year and what she was actually paid for 40 hours worked each week during this period.

20.        During the period of March 21, 2020 through on or about January 23, 2022, Plaintiff MADOLET worked 6 days per week from 8:00 am to 4:00 pm, totaling 48 hours per week.

21.        During this period in ¶ 20 above, Plaintiff was paid an hourly rate ranging between $5.63 per hour and $6.98 per hour, in violation of the Fair Labor Standards Act. Plaintiff MADOLET therefore claims the difference between the minimum wage rate for each

**4** of **10**

respective year and what she was actually paid for 40 hours worked each week during this period.

22.     Defendants never gave Plaintiff MADOLET notice that tips would be applied to cover the minimum wage deficiency that is otherwise available for food servers.

23.     Defendants unlawfully charged Plaintiff 3% of the credit card processing fee charged by the merchant for customers that paid by credit card.

24.     Furthermore, Defendants continuously "shaved" off hours from Plaintiff's weekly time worked and she was not paid anything at all for the "shaved" hours worked on a weekly basis.

25.     The payments to Plaintiff MADOLET by Defendants did not meet the applicable Florida Minimum Wage required for said period of time. Therefore, Plaintiffs claim the difference between the amount paid to Plaintiff MADOLET and the applicable Federal minimum wage for all hours worked for the relevant time periods pursuant to 29 C.F.R. s. 541.4 and 29 C.F.R. s. 778.5.[2]

26.     Defendants willfully and intentionally refused to pay Plaintiff MADOLET minimum wages as required by the Fair Labor Standards Act as Defendants knew of the Federal Minimum Wage requirements of the Fair Labor Standards Act and recklessly failed to investigate whether Defendants' payroll practices were in accordance with the Fair Labor Standards Act. Defendants remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendants for the time periods specified above.

**WHEREFORE**, Plaintiff MADOLET requests double damages and reasonable attorneys' fees from the Defendants pursuant to the Fair Labor Standards Act and as cited above,

---

[2] Letters regarding the Florida minimum wage violations are being sent to the Defendants, and the Complaint will be amended accordingly under the appropriate State minimum wage law.

to be proven at the time of trial for all minimum wages still owing from Plaintiff's entire employment period with Defendants or, as much as allowed by the Fair Labor Standards Act, whichever is greater, along with court costs, interest, and any other relief that his Court finds reasonable under the circumstances. ***The Plaintiffs request a trial by jury.***

## COUNT II. FEDERAL OVERTIME WAGE VIOLATION AGAINST DEFENDANTS JOINTLY AND SEVERALLY ON BEHALF OF PLAINTIFFS ROMERO AND MADOLET

27.     Plaintiffs re-allege the factual and jurisdictional statements in paragraphs 1 through 26 as though fully set forth herein.

28.     This action arises under the laws of the United States.

29.     This case is brought as a collective action under 29 U.S.C. § 216(b).  It is believed that the Defendants have employed several other similarly situated employees like Plaintiffs who have not been paid overtime wages for work performed in excess of 40 hours weekly from the filing of this Complaint back three years.

30.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought pursuant to The Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (section 216 for jurisdictional placement).

31.     29 U.S.C. § 207 (a) (1) states, "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

32.     Plaintiff JULIO RAUL SANDOVAL ROMERO, worked for Defendants as a cook from on or about April 10, 2010 through on or about January 23, 2022. ("relevant time period")

33.     As a cook, Plaintiff JULIO RAUL SANDOVAL ROMERO s' job duties required of him by Defendants, along with other employees, included preparing and cooking foods obtained from national and international sources, to customers who were local, national, and international residents.

34.     Plaintiff ROMERO's primary and most important job duty was cooking and customer service.

35.     Plaintiff DIANA CAROLINA SUAREZ MADOLET worked for Defendants as a waitress from on or about January 2016 through on or about September 2018 and then from December 2018 through on or about January 23, 2022. ("relevant time period")

36.     As a waitress, Plaintiff CAROLINA SUAREZ MADOLET s' job duties required of her by Defendants, along with other employees, included preparing and cooking foods obtained from national and international sources, to customers who were local, national, and international residents.

37.     Defendants' business activities involve those to which the Fair Labor Standards Act applies. Both the Defendants' business and each Plaintiff's work for the Defendants affected interstate commerce for the relevant time period. Each Plaintiff's work for the Defendants affected interstate commerce for the relevant time period because the materials and goods that each Plaintiff used on a constant and/or continual basis and/or that were supplied to Plaintiffs by the Defendants to use on the job, moved through interstate commerce prior to and/or subsequent to each Plaintiffs' use of the same. Each Plaintiff's work for the Defendants was actually in

and/or so closely related to the movement of commerce while they worked for the Defendants

that the Fair Labor Standards Act applies to each Plaintiff's work for the Defendants'.

38.     Additionally, Defendants regularly employed two or more employees for the

relevant time period who handled goods or materials that travelled through interstate commerce,

or used instrumentalities of interstate commerce as Plaintiffs did, thus making Defendants'

business an enterprise covered under the Fair Labor Standards Act.

39.     Upon information and belief, the Defendant Corporation had gross sales or

business done in excess of $500,000 annually for the years 2010 through to 2021 and expects the

same for the year 2022.

40.     During the period of about April 10, 2010 through on or about January 23, 2022,

Plaintiff ROMERO generally worked more than 40 hour any given week. Specifically in last 3

years, Plaintiff ROMERO worked six (6) days per averaging 55 hours per week.

41.     During the relevant time period, Plaintiff was paid on a salary basis, consisting of

a portion of his wages paid by check and a portion paid in cash.

42.     When dividing Plaintiff ROMERO weekly wages received (check and cash) by

the weekly average hours worked, Plaintiff ROMERO was paid approximately $30.00 per hour

as his regular hourly rate.

43.     Plaintiff ROMERO was not paid the proper overtime rate for any hours over 40

hours per week as required by the Fair Labor Standards Act, and therefore Plaintiff ROMERO

claims his halftime rate as required by the Fair Labor Standards Act – or an additional $15.00 per

hour for all overtime hours worked each week.

44.     During the period of about January 2016 through on or about September 2018,

Plaintiff MADOLET worked 54 hours per week and was not paid anything for her hours in

excess of 40 hours each week in violation of the Fair Labor Standards Act. Plaintiff MADOLET

therefore claims her time and a half time overtime rate based on the Federal minimum wage rate

for each respective year, for all worked in excess of 40 each week for the relevant time period.

45.     During the period of December 2018 through on or about March 20, 2020,

Plaintiff MADOLET, worked 54 hours per week and was not paid anything for her hours in

excess of 40 hours each week[3] in violation of the Fair Labor Standards Act. Plaintiff MADOLET

therefore claims her time and a half time overtime rate based on the Federal minimum wage rate

for each respective year, for all worked in excess of 40 each week for the relevant time period

46.     During the period of March 21, 2020 through on or about January 23, 2022,

Plaintiff MADOLET, worked 48 hours per week and was not paid anything for her hours in

excess of 40 hours each week[4] in violation of the Fair Labor Standards Act. Plaintiff MADOLET

therefore claims her time and a half time overtime rate based on the Federal minimum wage rate

for each respective year, for all worked in excess of 40 each week for the relevant time period.

47.     Defendant willfully and intentionally refused to pay each Plaintiff overtime wages

as required by the Fair Labor Standards Act as Defendant knew of the overtime requirements of

the Fair Labor Standards Act and recklessly failed to investigate whether Defendant's payroll

practices were in accordance with the Fair Labor Standards Act. Defendants manipulated

Plaintiff MADOLET s' paystubs to reflect incorrect amount of weekly hours worked and

included tip amounts on her paystubs that were not accurate. Defendants remain owing Plaintiffs

---

[3] Upon review of Plaintiff MADOLET's paystubs, it appears at times she was paid overtime, but it was not for all her overtime hours worked and was paid at an incorrect rate.
[4] Upon review of Plaintiff MADOLET's paystubs, it appears at times she was paid overtime, but it was not for all her overtime hours worked and was paid at an incorrect rate.

these wages since the commencement of each Plaintiff's employment with Defendants[5] through each Plaintiff's termination date.

Wherefore, the Plaintiffs request double damages and reasonable attorney fees from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, to be proven at the time of trial for all overtime wages still owing from each Plaintiff's entire employment period with Defendants or as much as allowed by the Fair Labor Standards Act along with court costs, interest, and any other relief that this Court finds reasonable under the circumstances. ***The Plaintiffs request a trial by jury.***

Respectfully Submitted,

J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorney For Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: ZABOGADO@AOL.COM

By:__/s/ J.H. Zidell_____
J.H. Zidell, Esq.
Florida Bar Number: 00101

---

[5] Except for approximately 5 weeks during the years 2019-2021 when Plaintiff ROMERO and Plaintiff MADOLET took vacation.

**10** of **10**